UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Pamela Reynolds

   v.                                                    Civil No. 14-cv-439-LM
                                                       Opinion No. 2015 DNH 104
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Pamela Reynolds moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ") is affirmed.

**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

> remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw

inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether the decision of the Acting Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material Facts (document no. 12).  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Reynolds has not worked since October of 2012.  Before that, she had a number of different jobs.  Up until 2004, she was an electronics assembly worker.  See Administrative Transcript (hereinafter "Tr.") 193.

3

With respect to her physical condition, Reynolds has been diagnosed with sleep apnea, carpal tunnel syndrome, and hypothyroidism. Her treatment has included a CPAP mask for sleep apnea and splints for her carpal tunnel syndrome. With respect to her mental condition, she has been diagnosed with depression and mood disorder. Treatment for her mental conditions has included a variety of medications, individual counseling, group counseling, and a partial hospital program.

The record includes an assessment of Reynolds's physical residual functional capacity,[1] made by a non-examining state-agency physician, Dr. Hugh Fairley. See Tr. 48-50. Dr. Fairley determined that Reynolds had the capacity to lift and/or carry 20 pounds occasionally and could lift and/or carry 10 pounds frequently. He also found that she was capable of standing and/or walking and sitting for about six hours in an eight-hour workday. With respect to postural activities, Dr. Fairley opined that Reynolds was able to occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Finally, he determined that she had no manipulative, visual, or communicative limitations, and had an unlimited ability to deal

---

[1] "Residual functional capacity," or "RFC," is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

with all environmental situations other than hazards such as machinery and heights, to which she could tolerate no exposure.

The record also includes documentation of a Psychiatric Review Technique completed by Dr. Laura Landerman. Dr. Landerman determined that Reynolds had: (1) mild restrictions of her activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence or pace; and (4) no episodes of decompensation of extended duration. In performing her assessment, Dr. Landerman gave primary weight to a report by Dr. Joan Scanlon, which was based upon an examination of Reynolds.

Dr. Scanlon, in turn, diagnosed Reynolds with dysthymic disorder,[2] panic disorder without agoraphobia, post-traumatic stress disorder, and pain disorder associated with her general medical condition. See Tr. 373. As to Reynolds's level of functioning, Dr. Scanlon had this to say:

> A. Activities of Daily Living: . . . [C]laimant possesses essential skills of daily living, exemplified in her prior work as a housekeeper. She is thereby able to complete household tasks, obtain needed funds, assist with meal preparation, and wash dishes. She presents as somewhat limited in this area due to her mood and level of motivation.

---

[2] "Dysthymia" is a "chronic mood disorder manifested as depression for most of the day, more days than not . . . ." Stedman's Medical Dictionary 602 (28th ed. 2006).

5

>B. Social Functioning: . . . [C]laimant has had a long history of difficulty establishing relationships dating to her childhood years.  However, she related appropriately to coworkers and supervisors in most work positions, and thus is not limited in this domain.
>
>C. Understanding and Remembering Instructions: . . . [C]laimant is able to understand and remember locations and work-like procedures, understand and recall very short and simple instructions, if not more detailed in nature.  She does not present as limited in this sphere.
>
>D. Concentration and Task Completion: . . . [C]laimant is able to maintain simple information processing if not more complex in nature, and maintain persistence and pace to complete tasks.  She does not present as limited in this domain.
>
>E. Reaction to Stress, Adaptation to Work or Work-Like Situations: . . . [C]laimant is sufficiently able to tolerate stresses in the work setting, render simple decisions, and maintain a schedule.  Her limitations reside in her level of motivation, mood, and physical constraints.

Tr. 373.

After conducting a hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

>3.  The claimant has the following severe impairments: sleep apnea, hypothyroidism, mild hip joint narrowing, obesity, depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
>. . . .
>
>4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

>   404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
>   and 416.926).
>
>   . . . .
>
>   5. After careful consideration of the entire record,
>   the undersigned finds that the claimant has the
>   residual functional capacity to perform light work as
>   defined in 20 CFR 404.1567(b) and 416.967(b) except
>   that she cannot climb ropes/ladders/scaffolds and she
>   can only occasionally climb remaps/stairs. She is
>   also limited from more than occasional balancing,
>   stooping, kneeling, crouching, and crawling. She
>   needs to avoid all exposure to hazards. Is limited
>   from more than minimal interaction with the general
>   public, but she is able to maintain interactions with
>   co-workers and supervisors.
>
>   . . . .
>
>   6. The claimant retains the residual functional
>   capacity to return to her past relevant work as an
>   electronics assembly worker (20 CFR 404.1565 and
>   416.965).
>
>   . . . .
>
>   10. Considering the claimant's age, education, work
>   experience, and residual functional capacity, there
>   are jobs that exist in significant numbers in the
>   national economy that the claimant can perform (20 CFR
>   404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 12, 14, 16, 18, 19.

## Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible

7

for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The question in this case is whether Reynolds is under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits).  Moreover,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ

8

is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Reynolds's Arguments

According to Reynolds, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) erred at step two by determining that her carpal tunnel syndrome was not a severe impairment; (2) formulated a residual functional capacity that did not account for the limiting effects of her mental impairments; (3) erred at step four by determining that she was capable of working as an electronics assembler; and (4) erred at step five by determining that there were other jobs in the national economy that she could perform. The court is not persuaded by any of Reynolds's arguments.

1. Step Two

Reynolds first claims that the ALJ erred at step two of the sequential evaluation process by failing to find that her carpal tunnel syndrome was a severe impairment. While Reynolds makes various arguments concerning the manner in which the ALJ made her step-two determination,

> the court need not inquire into whether [Reynolds's carpal tunnel syndrome] is a severe impairment because "[t]his court has consistently held . . . that an error in describing a given impairment as non-severe

> is harmless so long as the ALJ found at least one severe impairment and progressed to the next step of the sequential evaluation process."

Anderson v. Colvin, No. 14-cv-15-LM, 2014 WL 5605124, at *5 (D.N.H. Nov. 4, 2014) (quoting Chabot v. U.S. Soc. Sec. Admin., No. 13-cv-126-PB, 2014 WL 2106498, at *9 (D.N.H. May 20, 2014)). Here, the ALJ found five severe impairments and progressed to the next step of the sequential evaluation process. Therefore, her determination that Reynolds's carpal tunnel syndrome was not a severe impairment does not warrant a remand.

In addition to claiming that the ALJ erred at step two by not finding her carpal tunnel syndrome to be a severe impairment, Reynolds also claims that the ALJ erred by formulating an RFC that did not include manipulative limitations resulting from carpal tunnel syndrome. The court cannot agree.

In 2000, after a nerve conduction study, Reynolds received the following relevant diagnosis: "Mild right median neuropathy in the carpal tunnel consistent with right carpal tunnel syndrome." Tr. 606. In an office note from 2010, resulting from a follow-up visit for complaints related to Reynolds's CPAP mask, nurse Ashley Martin wrote:

> Ms. Reynolds also notes that, for the past few nights, she has had disturbed sleep because she is waking up around 3 in the morning with numbness and tingling in her wrists and arms. She says that she does have a history of carpal tunnel syndrome, and is currently not using splints.

11

Tr. 400. The notation quoted above appears under the heading "Subjective." Neither the diagnosis nor the treatment plan in Nurse Martin's office note says anything about carpal tunnel syndrome. Dr. Fairley did not identify any manipulative limitations in his physical RFC assessment, presumably because the office note documenting Reynolds's 2000 diagnosis of carpal tunnel syndrome was not placed in the record until after Dr. Fairley made his assessment. At Reynolds's hearing, the following relevant exchange took place:

> Q  We were talking about the electronics work. Would you have any problems using your hands now in that type of work?
>
> A  I don't know because it's been so long. I don't know. I mean, I do have a lot of hand pain. My fingers keep breaking and it goes into my elbows, the pain, so.

Tr. 31. With respect to her departure from the electronics assembly field, Reynolds testified: "The reason I got out of . . . electronics [in 2004] was because it was fading, so I decided to try driving the school bus." Tr. 30. In other words, Reynolds worked as an electronics assembly worker four years after her carpal tunnel diagnosis, and did not leave that occupation because of her carpal tunnel syndrome.

At steps one through four of the sequential evaluation process, which includes the determination of a claimant's RFC,

the claimant bears the burden of proving her disability.  See Bowen, 482 U.S. at 146; Seavey, 276 F.3d at 5.  Here, Reynolds has produced evidence of a diagnosis of carpal tunnel syndrome, but no medical opinion evidence of any manipulative limitations resulting from that diagnosis.  Even she is unable to say whether that condition would prevent her from doing her former work as an electronics assembler, and she testified that carpal tunnel syndrome is not what prompted her to leave that occupation.  In short, there is no evidence in the record linking Reynolds's carpal tunnel syndrome to any limitation in her ability to perform work-related activities.  Thus, the ALJ did not err by formulating an RFC that did not include a manipulative limitation.

### 2. Residual Functional Capacity

Reynolds next argues that the ALJ formulated an RFC that did not adequately account for her mental impairments.  Specifically, she criticizes the ALJ for: (1) ignoring the opinions of Dr. Kathy Brann and Dr. Ivan Boyadzhiev that her mental impairments rendered her unable to work; and (2) failing to adequately address several of the limitations identified by Dr. Scanlon.  She characterizes both those errors as impermissible substitutions of the ALJ's lay opinions for opinions of medical experts.  Reynolds is mistaken.

13

**Dr. Brann.** In a progress note dated August 18, 2011, under the general heading "Subjective" and the sub-heading "Mental Health Problem," Dr. Brann wrote: "The degree of incapacity that she is experiencing as a consequence of her illness is mild. Sequelae[3] of the illness include homelessness, an inability to work and harmed interpersonal relations." Tr. 229. Reynolds claims that the ALJ committed reversible error by ignoring Dr. Brann's opinion that she was unable to work due to her mental impairments. However, the statement on which Reynolds relies appears under the heading "Subjective," which means that it is Dr. Brann's report of Reynolds's report to him, not Dr. Brann's medical opinion. As Judge Barbadoro has explained:

> The fact that [the claimant] told [her doctor] that she was experiencing pain and the fact that he recorded her complaints in his notes does not convert her subjective complaints of pain into medical opinion, thus entitling it to some measure of deference. See 20 C.F.R. §§ 404.1527(a)(2), 404.1527(d), 416.927(a)(2), 416.927(d). Likewise, [the claimant's] subjective complaints are not entitled to greater weight simply because they appear in her physician's notes. See Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996) (noting that "[t]here is nothing objective about a doctor saying, without more, 'I observed my patient telling me that she was in pain.'").

---

[3] "Sequela" is defined as "an aftereffect of disease or injury." Webster's Third New International Dictionary 2071 (1993).

14

Ford v. Barnhart, No. 04-CV-194-PB, 2005 WL 1593476, at *8 (D.N.H. July 7, 2005). Based upon Ford, the ALJ's handling of the subjective complaint recorded in Dr. Brann's progress note does not warrant a remand.

**Dr. Boyadzhiev.** In a progress note dated September 29, 2011, under the general heading "Subjective" and the sub-heading "Mental Health Problem," Dr. Boyadzhiev wrote: "The degree of incapacity that she is experiencing as a consequence of her illness is moderate. Sequelae of the illness include harmed interpersonal relations and an inability to work." Tr. 222. Reynolds claims that the ALJ committed reversible error by ignoring Dr. Boyadzhiev's opinion that she was unable to work due to her mental impairments. That claim fails for the same reasons as Reynolds's claim regarding the subjective complaint recorded in Dr. Brann's progress note.

**Dr. Scanlon.** Based upon her psychological examination of Reynolds, Dr. Scanlon gave opinions on Reynolds's abilities in five different areas of functioning, including the following:

> [C]laimant is able to understand and remember locations and work-like procedures, <u>understand and recall very short and simple instructions</u>, if not more detailed in nature. She does not present as limited in this sphere.
>
> [C]laimant is able to <u>maintain simple information processing</u> if not more complex in nature, and maintain persistence and pace to complete tasks. She does not present as limited in this domain.

15

Tr. 373 (emphasis added). Reynolds claims that the ALJ committed reversible error by crafting an RFC that did not include limitations based upon the emphasized portions of Dr. Scanlon's opinion. But, each of the "limitations" that Reynolds criticizes the ALJ for excluding from her RFC is followed by Dr. Scanlon's opinion that Reynolds did not present as limited in the relevant area of functioning. Accordingly, the ALJ's decision not to include additional limitations related to instruction handling and information processing is supported by substantial evidence.

Reynolds also makes an argument concerning Dr. Scanlon's opinion of her ability to perform the activities of daily living. With regard to that area of functioning, Dr. Scanlon found:

> [C]laimant possesses essential skills of daily living, exemplified in her prior work as a housekeeper. She is thereby able to complete household tasks, obtain needed funds, assist with meal preparation, and wash dishes. She presents as somewhat limited in this area due to her mood and level of motivation.

Tr. 373. The ALJ, in turn made the following finding concerning that area of functioning:

> In activities of daily living, the claimant has [a] **mild** restriction. The claimant has reported that she manages all personal care without assistance. She is also able to cook, clean, do laundry, drive, shop and handle her personal finances.

Tr. 15 (emphasis in the original).  This is Reynolds's argument against the ALJ's finding:

> [W]hile Dr. Scanlon found limitations in the ability to perform activities of daily living, the ALJ did not accept those limitations, instead finding only mild limitations in that area.

Mot. to Reverse (doc. no. 9) 8.  Notwithstanding Reynolds's argument to the contrary, the ALJ's finding tracks Dr. Scanlon's finding rather closely.  Consequently, the court can discern no basis for Reynold's claim and no error in the ALJ's assessment of Reynolds's capacity to perform the activities of daily living.

In sum, the ALJ's handling of Dr. Scanlon's opinion does not warrant a remand.

### 3. Steps Four and Five

Reynolds claims that the ALJ made several different errors at steps four and five of the sequential evaluation process. She claims that the ALJ committed reversible error at step four by: (1) failing to conduct her analysis in conformance with Social Security Rulings 82-61 and 82-62; and (2) relying upon a flawed RFC.  Because the court has already determined that the ALJ committed no error in determining Reynolds's RFC, all that remains is Reynolds's claim that the ALJ's step-four finding was procedurally deficient.

"At step four the initial burden is on the claimant to show that she can no longer perform her former work because of her impairments." Manso-Pizarro, 76 F.3d at 17 (citing Santiago v. Sec'y of HHS, 944 F.2d 1, 5 (1st Cir. 1991)). Specifically, the claimant must: (1) "produce relevant evidence of the physical and mental demands of her prior work," Santiago, 944 F.2d at 5; and (2) "describe those impairments [that] preclude[ ] the performance of [that] particular job," id. If the claimant is able to do so, then "the ALJ must compare the physical and mental demands of that past work with current functional capacity." Id. (citing 20 C.F.R. § 404.1560(b)).

Reynolds has not met her initial burden. She argues that she "expressly testified that she can no longer perform the electronics assembly occupation due to hand, finger, and elbow pain." Mot. to Reverse (doc. no. 9) 12. But her actual testimony was that she did not know whether she would be able to use her hands to do that kind of work. See Tr. 31. She did testify to having some pain in her hands, see id., but she said nothing about the effects of that pain on her ability to use her hands, and she said nothing about the physical demands of electronics assembly. Thus, she has shown that she once received a diagnosis of carpal tunnel syndrome, and that she suffers some amount of hand pain, but she has not shown that her

18

medical condition or its symptoms would prevent her from performing her former work as an electronics assembler. Similarly, she testified that he has difficulty interacting with people, but that testimony, without more, is insufficient to meet her burden of showing that she can no longer perform her former work.

Because Reynolds has not met her initial burden at step four, the ALJ was under no obligation to perform the analysis Reynolds criticizes her for failing to perform. Accordingly, the ALJ did not commit a step-four error that warrants a remand. Finally, as the ALJ committed no error in determining that Reynolds was capable of performing her former work in electronics assembly, the court has no need to address Reynolds's claim that the ALJ erred in making her alternative step-five determination that there were other jobs in the national economy that Reynolds could perform.

## Conclusion

Because the ALJ committed neither a legal nor a factual error in evaluating Reynolds's claim and determining that she was not disabled, see Manso-Pizarro, 76 F.3d at 16, her motion for an order reversing the Acting Commissioner's decision, document no. 9, is denied, and the Acting Commissioner's motion for an order affirming her decision, document no. 11, is

19

granted. The clerk of the court shall enter judgment in accordance with this order and close the case.

    SO ORDERED.

                                        _____
                                        Landya McCafferty
                                        United States District Judge

May 22, 2015

cc:   Penelope E. Gronbeck, Esq.
      Karen B. Fitzmaurice, Esq.
      T. David Plourde, Esq.